1    HONORABLE RONALD B. LEIGHTON

2

3

4

5

6
                        UNITED STATES DISTRICT COURT
7                      WESTERN DISTRICT OF WASHINGTON
                                 AT TACOMA
8
     JILL MCKELVY,                              CASE NO. 14-CV-05681-RBL
9
                        Plaintiff,              ORDER REMANDING FOR
10                                              FURTHER PROCEEDINGS
             v.
11
     CAROLYN W. COLVIN, Acting
12   Commissioner of Social Security,

13                      Defendant.

14
            THIS MATTER is before the Court on Plaintiff Jill McKelvy's petition for judicial
15
     review of the Commissioner of Social Security's final administrative decision that she is not
16
     disabled. The ALJ determined that McKelvy has significant impairments that prevent her from
17
     performing her past relevant work, but that she was capable of performing other jobs that existed
18
     in significant numbers in the national economy.
19
                              I.    BACKGROUND
20
            In 2007, McKelvy injured her left foot and underwent surgery to repair a fracture. Dkt. #
21
     14, at 3. McKelvy continued to suffer pain in her ankle and underwent another surgery a year
22
     later. *Id.* Her second surgery failed to alleviate her pain and she filed an application for disability
23

24

1   insurance benefits in 2010. Tr. 279–80. McKelvy alleges that she is unable to work because of

2   her injured left foot and a possible delusion disorder.

3       The ALJ reviewed McKelvy's record and concluded that she was not disabled. The ALJ

4   found that, considering McKelvy's age, education, work experience, and RFC of sedentary, she

5   was capable of performing other jobs available in the national economy.

6       The Appeals Council remanded the case to develop the record in accordance with

7   regulatory standards and to resolve inconsistencies in McKelvy's RFC. Tr. 124–25. On remand,

8   the ALJ reevaluated the record, including additional evaluations, and again found that McKelvy

9   was not disabled and denied her application for benefits. The Appeals Council denied her request

10  for review, making the ALJ's decision the Commissioner's final decision.

11      McKelvy timely filed this action for judicial review of the Commissioner's decision,

12  McKelvy argues that the ALJ erred by: (1) not affording proper weight to a consultative

13  examiner's opinion about her sitting limitations; (2) failing to evaluate her delusion disorder; and

14  (3) not fully crediting her testimony.

15                          **II.   STANDARD**

16      The Commissioner's decision must be upheld if it is supported by substantial evidence

17  and the proper legal standards have been applied. *Hoffman v. Heckler,* 785 F.2d 1423, 1425 (9th

18  Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.,* 359 F.3d 1190, 1193 (9th

19  Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

20  adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation

21  omitted). "The substantial evidence test requires that the reviewing court determine" whether the

22  Commissioner's decision is "supported by more than a scintilla of evidence, although less than a

23  preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10

24

1    (9th Cir. 1975). The ALJ must provide "clear and convincing" reasons for rejecting the

2    uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d

3    821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted,

4    that opinion "can only be rejected for specific and legitimate reasons that are supported by

5    substantial evidence in the record." *Id.* at 830-31. If this Court reverses an ALJ's decision, "the

6    proper course . . . is to remand to the agency for additional investigation or explanation."

7    *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004).

8                                    **III.    DISCUSSION**

9    **A.    ALJ Properly Afforded Limited Weight to the Opinion of Dr. Suffis**

10          McKelvy argues that the ALJ failed to properly evaluate the medical opinion of an

11   examining physician, Dr. Suffis. Dkt. # 14, at 6–11. The Commissioner disagrees and responds

12   that the ALJ properly evaluated the medical evidence.

13          If the ALJ rejects a treating or examining physician's opinion that is contradicted by

14   another doctor, he must provide specific, legitimate reasons based on substantial evidence in the

15   record. *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 692 (9th Cir.2009). The ALJ

16   may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and

17   conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v.*

18   *Chater,* 157 F.3d 715, 725 (9th Cir.1998) (citing *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th

19   Cir. 1989). Rather than merely stating his conclusions, the ALJ "must set forth his own

20   interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v.*

21   *Bowen,* 849 F.2d 418, 421–22 (9th Cir.1988)).

22          Dr. Suffis conducted a physical evaluation of McKelvy and determined that her foot

23   impairment limited her to sedentary work. Dkt. # 14, at 6. Dr. Suffis specifically opined that

24

1    McKelvy could sit for six hours—both consecutively and total—and stand or walk for up to two

2    hours in fifteen minute increments. Tr. 619. In addition, he found that McKelvy "did not have

3    any sitting restriction". *Id.*

4           The ALJ accepted Dr. Suffis' opinion that "[McKelvy] can function at a level of

5    sedentary to light" and gave it great weight. Tr. 629. The ALJ assigned, however, "limited

6    weight" to Dr. Suffis' opinion that McKelvy could sit for a total of six hours as internally

7    inconsistent with his assessment that she could sit for six hours consecutively with no restrictions

8    and her longitudinal treatment history. Tr. 19. Inconsistency within a doctor's conclusion is a

9    specific and legitimate reason for rejecting a medical opinion. *See Bayliss v. Barnhart,* 427 F.3d

10   1211, 1216 (9th Cir.2005) (holding that discrepancy between a physician's notes and recorded

11   observations and opinions and the physician's assessment of limitations is a clear and convincing

12   reason for rejecting the opinion).

13          This Court finds that the ALJ's reason for affording limited weight to a portion of Dr.

14   Suffis' opinion is specific and legitimate, and supported by substantial evidence in the record. As

15   such, the ALJ did not err in evaluating the opinion of Dr. Suffis.

16   **B.      The ALJ's Assessment of McKelvy's Delusion Disorder**

17          McKelvy's second argument is that the ALJ did not investigate her claimed delusion

18   disorder.  McKelvy claims that long hairs are growing in areas they should not and wrapping

19   around her body. She argues that rather than follow up on the claimed disorder, the ALJ instead

20   questioned whether she had it at all.  She argues that the ALJ erred in concluding that McKelvy's

21   mental impairment of delusion disorder was not disabling. Tr. 15. McKelvy also argues that the

22   ALJ failed to develop the record to sufficiently address whether her delusion disorder is in fact a

23   severe impairment, or whether it alters her RFC.  She claims that the case should be remanded

24

1   for an additional psychological evaluation to address these issues. The Commissioner argues that

2   any disability must have a duration of 12 months or be expected to last 12 months to count as

3   severe, and that McKelvy's delusion disorder does not meet this requirement. She argues that the

4   claimed disorder was, nevertheless, properly considered in assessing McKelvy's residual

5   function capacity.

6          An ALJ may only find that a claimant lacks a medically severe impairment or

7   combination of impairments when this conclusion is "clearly established by medical evidence."

8   S.S.R. 85-28, at 3; *Webb v. Barnhart,* 433 F.3d 683, 686-687 (9th Cir. 2005). Where non-severe

9   impairments exist, they must be considered in combination at step two to determine if, together,

10  they have more than a minimal effect on a claimant's ability to perform work activities. 20

11  C.F.R. § 416.929. If impairments in combination have a significant effect on a claimant's ability

12  to do basic work activities, they must be considered throughout the sequential evaluation

13  process. *Id.* Mental limitations must be part of the RFC assessment, because "[a] limited ability

14  to carry out certain mental activities, such as limitations in understanding, remembering, and

15  carrying out instructions, and in responding appropriately to supervision, coworkers, and work

16  pressures in a work setting, may reduce [a claimant's] ability to do past work and other work."

17  20 C.F.R. § 404.1545(c). The ALJ's own finding that the record is inadequate to allow for proper

18  evaluation of the evidence triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen v.*

19  *Chater,* 80 F.3d 1273, 1288 (9th Cir.1996); *Armstrong v. Comm'r of Soc. Sec. Admin.,* 160 F.3d

20  587, 590 (9th Cir.1998). The ALJ's duty to supplement Plaintiff's record is also triggered by

21  ambiguous evidence. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir.2001). Where there is

22  conflicting evidence, and not all essential factual issues have been resolved, a remand to fully

23

24

1   develop the record is appropriate. *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1101

2   (9th Cir. 2014).

3         Here, the medical evidence was sufficiently ambiguous regarding McKelvy's mental

4   impairment to trigger the ALJ's duty to fully and fairly develop the record. The ALJ conceded

5   that it was "unclear" whether McKelvy was  having delusions at all. Tr. 15. An independent

6   psychological examination could reconcile the conflicting evidence between the physicians'

7   diagnoses of delusion disorder and the nurse practitioner's observation that the delusions were in

8   fact "small bugs." Tr. 15, 689. The ALJ ignored the diagnoses of two  examining

9   dermatologists—Dr. Lynn Sudduth, M.D. and Dr. Irene Buno, M.D.—that McKelvy *did* suffer

10  from delusion disorder, instead relying solely on the treating nurse practitioner's, VanVoorhis,

11  conclusion that McKelvy was not delusional. The ALJ erred because he did not explicitly reject

12  Dr. Sudduth's and Dr. Buno's opinions, nor set forth specific, legitimate reasons for crediting

13  VanVoorhis' opinion  over either physician.

14        While the ALJ determined that "there is no indication that [delusions] have caused any

15  further deterioration in her mental health function", this Court finds that this conclusion is based

16  on an incomplete picture of McKelvy's overall mental health. Tr. 15. The evidence included two

17  delusion disorder diagnoses. The existence of a mental impairment is ambiguous and the record

18  is inadequate to determine her level of function. This Court concludes the ALJ erred in failing to

19  develop the record to determine the existence of a delusion disorder.

20        The ALJ could not make a factual determination about whether the delusion disorder

21  McKelvy claimed did or be expected to satisfy the 12 month requirement. This Court cannot do

22  so either, and therefore must reluctantly remand the case to further develop the record. Based on

23  the foregoing, the matter shall be remanded to further develop the record and to make a new

24

1   determination at step two of the sequential evaluation process with respect to McKelvy's mental

2   impairment.

3   **C.      The ALJ's Assessment of McKelvy's Credibility**

4          Finally, the ALJ determined that McKelvy's claims of pain were not credible because she

5   sought very little treatment for it. McKelvy argues that she explained that she could not afford

6   treatment, and that the ALJ's credibility determination was error. The Commissioner argues that

7   the ALJ provided specific, legitimate, clear, and convincing reasons for discounting her

8   credibility on the extent of her pain.

9          Questions of credibility are solely within the control of the ALJ. *See Sample v.*

10  *Schweiker,* 694 F.2d 639, 642 (9th Cir.1982). The Court should not "second-guess" this

11  credibility determination. *Allen v. Heckler,* 749 F.2d 577, 580 (9th Cir. 1984). To reject a

12  claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the

13  disbelief." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1996) (citation omitted). The ALJ "must

14  identify what testimony is not credible and what evidence undermines the claimant's

15  complaints." *Id.*; *see also Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir.1993). Unless affirmative

16  evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's

17  testimony must be "clear and convincing." *Lester,* 81 F.2d at 834. In determining a claimant's

18  credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as

19  reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that

20  "appears less than candid." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir.1996). The ALJ also

21  may consider a claimant's work record and observations of physicians and other third parties

22  regarding the nature, onset, duration, and frequency of symptoms. *See id.*

23

24

1    The ALJ found McKelvy to be not fully credible for a number of reasons. First, McKelvy

2    continued to allege limiting symptoms associated with her foot despite maintaining "normal

3    range of motion, motor strength, and sensation." Tr. 18. Second, contrary to her ALJ hearing

4    testimony, McKelvy's "treatment records evidence very few complaints of pain." *Id.* In fact,

5    current medical records "evidence no back, joint, or extremity pain" and her testimony was

6    "inconsistent with her reports to her physicians, as well as findings on examination." Tr. 18, 111.

7    Similarly, McKelvy "received very little specialized mental health treatment" and was

8    consistently observed by physicians to be "alert, oriented, and cooperative with appropriate

9    mood and. . .normal memory, judgment, and insight." Tr. 18–19. Finally, the ALJ determined

10   that the overall medical evidence was "inconsistent with [McKelvy's] allegations of disabling

11   physical and mental health limitations." Tr. 19.

12   McKelvy's only explanation for the lack of treatments and complaints of pain was that

13   they were due to her inability to afford them and finding transportation. Dkt. # 14, at 16. Courts

14   have upheld a claimant's failure to seek treatment as a reasonable ground for an ALJ to discount

15   credibility. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.2005) (upholding ALJ in

16   discounting claimant's credibility in part due to lack of consistent treatment, noting fact that

17   claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had

18   sought some treatment, was powerful evidence regarding extent to which she was in pain); *Fair*

19   *v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (claimant's failure to seek treatment "can cast doubt

20   on the sincerity of the claimant's pain testimony"). During the appointment in which McKelvy

21   did complain of pain, such complaints were not supported by medical evidence. *See Batson v.*

22   *Commissioner of Social Security Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ did not err in

23

24

1    assessing claimant with residual functional capacity that was inconsistent with claimant's own

2    testimony, where substantial evidence supported the ALJ in finding claimant to be not credible).

3    In light of all the reasons given by the ALJ for McKelvy's lack of credibility and in light of the

4    objective medical evidence on which the ALJ relied, there was substantial evidence supporting

5    the ALJ's credibility determination.

6                                                    CONCLUSION

7          The Commissioner's decision to deny benefits is **REVERSED** and **REMANDED**. On

8    remand, the ALJ should: (1) develop the record regarding McKelvy's alleged mental impairment

9    and determine whether McKelvy suffers from a delusion disorder; (2) reevaluate, as necessary,

10   the medical evidence in view of any new evidence related to her alleged delusion disorder that is

11   developed; and (3) reevaluate, as necessary, McKelvy's RFC to include any diagnosed delusion

12   disorder.

13         IT IS SO ORDERED.

14         Dated this 16th day of July, 2015.

15

16                                                    _____
                                                      Ronald B. Leighton
17                                                    United States District Judge

18

19

20

21

22

23

24